FILED
RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2016 JUN -3 PM 12: 07

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

YVONNE DEJESUS,                          )
                                         )
                        Plaintiff,       )
                                         )        8:16-cv-1406-T-17AEP
        v.                               )        Case No.:
                                         )
COOK INCORPORATED, COOK MEDICAL          )        JURY TRIAL DEMANDED
LLC a/k/a COOK MEDICAL, INCORPORATED,    )
and WILLIAM COOK EUROPE APS.             )
                                         )
                        Defendants.      )
_____/

## COMPLAINT

COMES NOW, Plaintiff YVONNE DEJESUS, individually (hereinafter referred to as "Ms. DeJesus" or "Plaintiff"), by and through her undersigned counsel, hereby submits this Complaint against Defendants, COOK INCORPORATED, COOK MEDICAL LLC a/k/a COOK MEDICAL, INCORPORATED, and WILLIAM COOK EUROPE APS, (hereinafter collectively referred to as "Cook" or "Defendants"), for damages arising from the injuries as a result of the allegations, claims and theories of recovery relating to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion and/or distribution of its unsafe medical device known as an inferior vena cava, and upon information and belief, hereby alleges and states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and the Defendants.



TPA037106
$400—

1

2.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because at all times relevant, a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Defendants conduct substantial business in this District including: marketing, advertising, promoting, distributing and receiving substantial compensation and profits from sales and other acts that caused or contributed to the harm to Ms. DeJesus giving rise to this action. Also Defendants made or caused to be made material omissions and misrepresentations and breach of warranties in Florida.

### Party Plaintiff

3.      PLAINTIFF YVONNE DEJESUS, at all times relevant and material hereto, was a resident and citizen of the State of Florida. Ms. DeJesus suffered injuries and damages as a direct result of the implantation of the Defendants' Cook IVC Filter.

### Party Defendants

4.      Upon information and belief, Defendant COOK INCORPORATED is an Indiana Corporation with a principal place of business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant COOK INCORPORATED regularly conducts business in the State of Illinois and Indiana, and is authorized to do so. Defendant COOK INCORPORATED may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215

5.      Upon information and belief, Defendant COOK MEDICAL LLC, *formerly known as* COOK MEDICAL INCORPORATED, is an Indiana Corporation with a principle place of business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant COOK MEDICAL, LLC regularly conducts business in the State of Illinois and Indiana, and is authorized to do so. Defendant COOK MEDICAL, LLC may be served with process upon its

registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

6.      Upon information and belief, Defendant WILLIAM COOK EUROPE APS is based in Bjaeverskov, Denmark and regularly conducts business in the State of Illinois and Indiana, and is authorized to do so. Defendant WILLIAM COOK EUROPE APS may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

7.      At all times alleged herein, the Cook defendants include any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

8.      Cook develops, manufactures, sells and distributes medical devices for use in various medical applications including endovascular cardiology, and surgical products throughout the United States and around the world. Cook's products at issue in this matter include the Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum all of which are used for the prevention of recurrent pulmonary embolism via placement in the vena cava (hereinafter referred to as the "Cook IVC Filter" or "IVC Filter").

9.      At all times relevant, Cook was engaged in the business of researching, designing, testing, developing, manufacturing, packaging, labeling, marketing, advertising, distributing, promoting, warranting and selling in interstate commerce, its IVC Filters either directly or indirectly through third parties or related entities.

## TAG-ALONG ACTION

10.     This is a potential tag-along action and in accordance with 28 U.S.C. § 1407 it should be transferred to the United States District Court for the Southern District of Indiana for inclusion in *In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation*, MDL # 2570 (Honorable Richard L. Young).

## FACTUAL BACKGROUND

11.     This action is brought by YVONNE DEJESUS, individually, who was implanted with Cook's IVC Filter which ultimately has caused Ms. DeJesus serious injuries and damages as a result of adverse events including: tilting, perforation, fracture, breakage and migration.

12.     Inferior Vena Cava filters is the term used to describe a device that is designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC Filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

13.     The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC Filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

14.     Cook IVC Filters are associated with, and cause, an increased risk for serious injury and death as a result of adverse events including: tilting, perforation, fracture, breakage and migration.

15.     Defendants design, research, develop, manufacturer, test, market, advertise, promote, distribute, and sell products that are sold to and marketed to prevent, among other things, recurrent

pulmonary embolism via placement in the vena cava. Defendants' products include, the Cook Celect Vena Cava Filter and the Gunther Tulip Filter, which is introduced via a coaxial introducer sheath system.

16.     The Cook Filters are retrievable filters.

17.     The Cook Celect' Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

18.     The Gunther Tulip' Vena Cava Filter has a top hook and (4) anchoring struts for fixation and on each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on each side of the strut forming an overall "flower" type formation on each strut.

19.     At all times relevant hereto, the Cook IVC Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism placement in the vena cava.

### *THE FDA'S 510(k) CLEARANCE PROCESS AND DEFENDANTS' APPLICATION*

20.     Defendants sought the U.S. Food and Drug Administration (hereafter "FDA") approval to market the Cook Filters and/or its components under section 510(k) of the Medical Device Amendment.

21.     The 510(k) clearance process refers to Section 510(k) of the Medical Device Amendments of 1976 (hereafter "MDA") of the Federal Food, Drug, and Cosmetic Act. Under this process, device manufacturers are only required to notify the FDA at least ninety (90) days before they market a device claimed to be "substantially equivalent" to a device the FDA approved for sale prior to 1976, when the MDA was enacted.

22.     No clinical testing is required or any formal review for the safety or efficacy of the said device under this process.

23.     Subsequent amendments to the MDA allowed for 510(k) clearance for products deemed "substantially equivalent" to post-MDA, 510(k)-cleared devices.

24.     Through this domino effect, devices deemed "substantially equivalent" to devices previously deemed "substantially equivalent" to devices approved for sale by the FDA prior to 1976 could be sold to patients in a matter of 90 days without any clinical testing.

25.     The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)...A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

26.     In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis...The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours...Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

27.     In 2012, at the request of the FDA, the National Institute of Health (hereafter "NIH") conducted a thorough review of the 510(k) process, coming to the following major conclusions:

> The 510(k) clearance process is **not intended to evaluate the safety and effectiveness of medical devices** with some exceptions. The 510(k) process **cannot be transformed into a pre-market evaluation of safety and effectiveness** so long as the standard for clearance is substantial equivalence to any previously cleared device. (emphasis added).

28.     The NIH explained, "The assessment of substantial equivalence does not require an independent demonstration that the new device provides a 'reasonable assurance of safety and effectiveness.'" Further, the NIH even pointed out that the classification of predicate devices approved for sale prior to the 1976 MDA "did not include any evaluation of the safety and effectiveness of individual medical devices . . . Thus is common for devices to be cleared through the 510(k) program by being found substantially equivalent to devices that were never individually evaluated for safety and effectiveness, either through the original device classification program or through the 510(k) process."

29.     Defendants' 510(k) application claimed that the Cook IVC Filters were substantially equivalent to devices previously cleared through the 510(k) process. Therefore, the Cook IVC Filter's clearance for sale was based on its purported substantial yet indirect similarity to a medical device approved for sale by the FDA prior to 1976.

30.     Clearance for sale under the 510(k) process does not equate to FDA approval of the cleared device.

### COOK IVC FILTERS' DEFECTIVE DESIGN

31.     At all times relevant hereto, Defendants knew its Cook IVC Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

32.     A review of all Cook IVC Filters retrieved between July 2006 and February 2008 was performed. One hundred and thirty (130) filter retrievals were attempted but in thirty-three (33) cases, the standard retrieval technique failed. The authors concluded that "unsuccessful retrieval was due to significant endotheliazation and caval penetration" and that

"hook endotheliazlization is the main factor resulting in failed retrieval and continues to be a limitation with these filters."[1]

33.    A review of one hundred and fifteen (115) patients who underwent Cook Celect IVC filter insertion between December 2005 and October 2007 was performed. While filter insertion was successful in all patients, the authors also conclude that "[f]ailed retrieval secondary to hook endotheliazation continues to be an issue with this filter."[2]

34.    In a review of clinical data related to seventy-three (73) patients who had Celect IVC Filter implanted between August 2007 and June 2008, the authors found that the Celect IVC filter was related to a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in sixty-one (61) patients, four (4) filters (6.5%) showed significant tilt. Follow-up abdominal CT in eighteen (18) patients demonstrated filter related problems in seven (7) (39%), which included penetration of filter legs in four (4) and fracture/migration of filter components in one (1).

35.    In a study of Gunther Tulip and Celect IVC filters implanted between July 2997 and May of 2009 reported by Cardiovascular Interventional Radiology electronically on March 30, 2011 and published by journal in April 2012, one hundred percent (100%) of the Cook Celect filters and Gunther Tulip filters imaged after seventy one (71) days of implant caused some degree of filter perforation of the vena cava wall.[3] The authors concluded that "[a]lthough infrequently reported in the clinical literature, clinical sequelae from IVC filter components breaching the vena

---

[1] O. Doody, et al.,: *Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fail*, Cardiovascular Intervent Radiol (September 4, 2008 Technical Note).

[2] O. Doody, et al: *Initial Experiences in 115 patients with the retrievable Cook Celect Vena Cava Filter*, Journal of Medical Imaging and Radiation Oncology (2009 53, 64-68)(Original article).

[3] Durack JC, et al., *Perforation of the IVC: Rule rather than the exception after longer indwelling times for the Gunther Tulip and Celect Retrievable Filters*, Cardiovasc Intervent Radiol (2012 April; 35(2):299-308. Epub 2011 March 30).

cava can be significant." Defendants knew or should have known that their IVC filters were more likely than not to perforate the vena caval wall.

36.     The same study reported that tilt was seen in twenty (20) out of fifty (50) or forty percent (40%) of the implanted Gunther Tulip and Celect IVC filters and all titled filters also demonstrated vena caval perforation. Defendants knew or should have known that their IVC filters were more likely than not to tilt and to perforate.

37.     While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants failed to disclose to physicians, patients and/or Ms. DeJesus that its Cook IVC filters were subject to breakage, tilt, inability of removal and migration even though they knew or should have known the same was true.

38.     At all times relevant hereto, the Defendants continued to promote the Cook IVC filters as safe and effective even when inadequate clinical trials had been performed to support long or short term to safety and/or efficacy.

39.     The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.

40.     The Cook Filters are constructed of conichrome.

41.     The Defendants specifically advertise the conichrome construction of the filter as a frame which "reduces the risk of fracture."

42.     The failure of the Cook Filters is attributable, in part, to the fact that the Cook Filters suffer from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

43.     Despite Defendants' claims, the product is and always was deeply flawed and defective.

44.     The testing done on the Cook IVC filter prior to launch was woefully inadequate and not representative of real-world, clinical situations.

45.     Defendants market their IVC Cook filter as safe merely based on the FDA 501(k) process, as opposed to an affirmative clinical determination of safety.

46.     Indeed, Defendants knew that there was no *clinical* evidence to support the contention that its device was safe or effective.

47.     Upon information and belief, prior to Ms. DeJesus' implant and surgeries, Defendants were aware of defects and unreasonably high rates of problems with the Cook IVC Filter, including, but not limited to high rate for serious injury and death.

48.     Specifically, Defendants were aware of unreasonably high rates of the filter tilting, perforating, fracturing, breaking, migrating, and other maladies requiring removal of the Cook IVC filter.

49.     Prior to marketing and selling the Cook IVC filter, Defendants knew or should have known that the cook IVC filter was not a clinically safe device.

50.     Despite knowing, or being in a position where they should have known of the unreasonable risks associate with the Cook IVC filter, Defendants began to market and sell the Cook IVC filter.

51.     Since its inception, the Cook IVC filter experienced an unreasonably high rate of adverse events.

52.     During the marketing and sale of the Cook IVC filter, Defendants knew or should have known that the system was not a clinically safe device.

53.     After Defendants began marketing and selling the Cook IVC filter, they quickly began receiving a high number of reports and warnings from surgeons and others regarding failed Cook IVC filters.

54.     Defendants were made aware of Cook IVC filter failures through direct communications with customer surgeons.

55.     Defendants did not take proper action in response to surgeon reports and warnings.

56.     Despite knowing, or being in a position where they should have known, of the unreasonable risks associated with the Cook IVC filters, Defendants continued to market and sell the Cook IVC filters.

57.     That at all times relevant hereto, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Ms. DeJesus.

58.     The Cook IVC filters were more dangerous than an ordinary consumer would reasonably expect, and the risks associated with it were more dangerous than the risks associated with other medical devices that were available to treat Ms. DeJesus' condition.

## COUNT I
## STRICT LIABILITY - FAILURE TO WARN

59.     Plaintiff re-alleges and incorporates by reference paragraphs 1-58 above as if fully stated herein.

60.     Cook IVC Filters were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Ms. DeJesus, of the dangerous risks associated with the subject product, including but not limited to

the risk of tilting, perforation, fracture and migration which are associated with and did cause serious injury and/or death.

61.     Information provided by Cook to the medical community and to consumers concerning the safety and efficacy of its IVC Filters did not accurately reflect the serious and potentially fatal adverse events Ms. DeJesus could suffer.

62.     At all times relevant hereto, the Cook IVC Filters were dangerous and presented a substantial danger to patients who were implanted with the Cook IVC Filters, and these risks and dangers were known or knowable at the times of distribution and implantation in Ms. DeJesus. Ordinary consumers would not have recognized the potential risks and dangers the Cook IVC Filters posed to patients, because their use was specifically promoted to improve health of such patients.

63.     Had adequate warnings and instructions been provided, Ms. DeJesus would not have been implanted with Cook IVC Filters, and would not have been at risk of the harmful injuries described herein. The Defendants failed to provide warnings of such risks and dangers to Ms. DeJesus and her medical providers as described herein. Neither Ms. DeJesus, nor Ms. DeJesus' physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Cooks' IVC Filters.

64.     Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by Cook IVC Filters.

65.     Ms. DeJesus, individually and through her implanting physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

66.     Defendants had a continuing duty to warn Ms.DeJesus and her physicians of the dangers associated with the subject products.

67.     Safer alternatives were available that were effective and without risks posed by Cooks' IVC Filters.

68.     As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and have medical bills, both past and future, related to care because of the Cook IVC Filters' defects.

69.     By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of their failure to warn and/or adequately warn Ms. DeJesus and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

**WHEREFORE**, Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## COUNT II
## STRICT LIABILITY - DESIGN DEFECT

70.     Plaintiff re-alleges and incorporates by reference paragraphs 1-69 above as if fully stated herein.

71.     Defendants have a duty to provide adequate warnings and instructions for their products including their IVC Filters, to use reasonable care to design a product that is not unreasonably dangerous to users.

72.     At all times relevant to this action, Defendants designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted and sold their IVC Filters, placing the devices into the stream of commerce.

73.     At all times relevant to this action, Cook's IVC Filters were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a condition that was defective and unreasonably dangerous to consumers, including Ms. DeJesus.

74. Cook IVC Filters are defective in their design and/or formulation in that they are not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

75. Cook IVC Filters were expected to reach, and did reach, users and/or consumers, including Ms. DeJesus, without substantial change in the defective and unreasonably dangerous condition in which they were manufactured and sold.

76. Physicians implanted as instructed via the Instructions for Use and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants. Ms. DeJesus received and utilized Cook IVC Filters in a foreseeable manner as normally intended recommend, promoted, and marketed by the Defendants.

77. Cook IVC Filters were and are unreasonably dangerous in that, as designed, failed to perform safely when used by ordinary consumers, including Ms. DeJesus, including when the filters were used as intended and in a reasonably foreseeable manner.

78. Cook IVC Filters were and are unreasonably dangerous and defective in design or formulation for their intended use in that, when they left the hands of the manufacturers and/or supplier, they posed a risk of serious vascular and other serious injury which could have been reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

79. Cook IVC Filters were insufficiently tested and caused harmful adverse events that outweighed any potential utility.

80. Cook IVC Filters, as manufactured and supplied, were defective due to inadequate warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

81. Cook IVC Filters, as manufactured and supplied, were defective due to its no longer being substantially equivalent to its predicate device with regard to safety and effectiveness.

14

82. Cook IVC Filters as manufactured and supplied by the Defendants are and were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from use and acquired additional knowledge and information confirming the defective and dangerous nature of its IVC Filters, Defendants failed to provide adequate warnings to the medical community and the consumers, to whom Defendants were directly marketing and advertising; and further, Defendants continued to affirmatively promote their IVC Filters as safe and effective and as safe and effective as their predicate device.

83. As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the IVC filter's defect.

84. By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of their failure to warn and/or adequately warn Ms. DeJesus and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

**WHEREFORE,** Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## COUNT III
## NEGLIGENCE

85. Plaintiff re-alleges and incorporates by reference paragraphs 1-84 above as if fully stated herein.

86. At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Cook IVC Filters.

87.     At all times relevant hereto, the Cook Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to Ms. DeJesus and to those people receiving their IVC Filters.

88.     At the time of manufacture and sale of the Cook IVC Filters, the Cook Defendants knew or reasonably should have known the Cook IVC Filters:

a.   were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device, as aforesaid;

b.   were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device, as aforesaid;

c.   were designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or

d.   were designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena caval wall.

89.     Despite the aforementioned duty on the part of the Cook Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

e.   unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Cook IVC Filters, specifically its incidents fracture, migration, perforation and other failure;

f.   unreasonably and carelessly manufacturing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

g.   unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

    h.   unreasonably and carelessly designed a product that presented a risk of harm to Ms. DeJesus and others similarly situated in that it was prone to fail.

90.    As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the Cook IVC Filters' defects.

91.    By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of their failure to warn and/or adequately warn Ms. DeJesus and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

**WHEREFORE,** Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

92.    Plaintiff re-alleges and incorporates by reference paragraphs 1-91 above as if fully stated herein.

93.    Defendants had a duty to give adequate and appropriate warnings to Ms. DeJesus regarding particular risks about the Cook IVC filter that Defendants knew or should have known were involved in Ms. DeJesus' reasonably foreseeable use of the product.

94.    Ms. DeJesus' use of the Cook IVC filter was reasonably foreseeable by Defendants.

95.    Defendants knew or should have known of particular risks involved in Ms. DeJesus' reasonably foreseeable use of the product.

96.    Breaching their duty, Defendants failed to provide adequate or appropriate warnings to Ms. DeJesus.

97.     As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the Cook IVC Filters' defects.

98.     By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of their failure to warn and/or adequately warn Ms. DeJesus and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

**WHEREFORE,** Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY

99.     Plaintiff re-alleges and incorporates by reference paragraphs 1-98 above as if fully stated herein.

100.    Ms. DeJesus, through her medical providers, purchased a Cook IVC Filter from Defendants.

101.    At all times to this cause of action, the Cook Defendants were merchants of goods of the kind including medical devices and vena cava filters (i.e., Cook IVC Filters).

102.    At the time and place of sale, distribution and supply of the Cook IVC Filters to Ms. DeJesus (and to other consumer and the medical community), the Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested.

103. At the time of Ms. DeJesus' purchase from Defendants, the Cook IVC Filters were not in a merchantable condition and Defendants breached their expressed warranties, in that the filters:

    i. were designed in such a manner so as to be prone to an unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

    j. were designed in such a manner so as to result in an unreasonably high incident of injury to the organs of its purchaser; and

    k. were manufactured in such a manner so that the exterior surface of the Cook Filters were inadequately, improperly and inappropriately designed causing the device to weaken and fail.

104. As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the Cook IVC Filters' defects.

105. By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of their breach express warranty.

**WHEREFORE,** Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

106. Plaintiff re-alleges and incorporates by reference paragraphs 1-105 above as if fully stated herein.

107. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold its IVC Filters.

108.   At all relevant times, the Defendants intended its IVC Filters be used in the manner that Ms. DeJesus in fact used it

109.   Defendants impliedly warranted their IVC Filters to be of merchantable quality, safe and fit for the use for which the Defendants intended them and for which Ms. DeJesus in fact used it.

110.   Defendants breached their implied warranties as follows:

   a.   Defendants failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Cook IVC Filters would cause harm;

   b.   Defendants manufactured and/or sold their Cook IVC Filters and said filters did not conform to representations made by the Defendants when they left the Defendants' control;

   c.   Defendants manufactured and/or sold their Cook IVC Filters which were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the Cook Filters' design or formulation exceeded the benefits associated with that design. These defects existed at the time the products left the Defendants' control; and

   d.   Defendants manufactured and/or sold their Cook IVC Filters when they deviated in a material way from the design specifications, formulas or performance standards or from otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendants' control.

111.   Further, Defendants' marketing of their Cook IVC Filters was false and/or misleading.

112.   Ms. DeJesus, through her attending physicians, relied on these representations in determining which IVC filter to use for implantation in Ms. DeJesus.

113.    Defendants' filters were unfit and unsafe for use by users as they posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Defendants breached their expressed warranties and the implied warranties associated with the product.

114.    The foregoing warranty breaches were a substantial factor in causing Ms. DeJesus' injuries and damages as alleged.

115.    As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Ms. DeJesus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Ms. DeJesus has suffered emotional trauma, harm and injuries that will continue into the future. Ms. DeJesus has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Ms. DeJesus has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the Cook IVC Filters' defects.

116.    By reason of the foregoing, Defendants are liable to Ms. DeJesus for damages as a result of its breaches of implied warranty.

WHEREFORE, Plaintiff, demands judgment against Defendants and seeks damages, together with interest, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF MS. DEJESUS, respectfully demands judgment against COOK DEFENDANTS for damages and any other relief the Court deems just and proper and MS. DEJESUS may be entitled to in law or in equity according to the claims pled herein.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests trial by jury to hear this cause of action as to all issues and to award such damages as the jury finds to be fair and reasonable under the circumstances.

Dated this 1st day of June, 2016.

Respectfully submitted,

Christina E. Unkel, Esquire
Florida Bar No. 99203
MAGLIO CHRISTOPHER & TOALE, P.A.
1605 Main Street, Suite 710
Sarasota, FL 34236
Phone 888-952-5242
Fax 877-952-5042
Primary Email: cunkel@mctlawyers.com
Secondary Email: erika@mctlawyers.com
Secondary Email: jzouras@stephanzouras.com
Secondary Email: rstephan@stephanzouras.com